All rise. Illinois Senate Court of Appeals is now in session. I will suggest that Robert E. Gore is presiding. Everyone can be seated. Good morning to all. Case number 15, Court of Arguments. If you guys can stand and be silent. The lawyers who are going to argue the case, please approach the bench and introduce yourself to the court. Good morning. My name is Michael Johnson. I'm appearing on behalf of the appellant Bengali Sylla. I'd like to express my gratitude to the court for rescheduling oral argument. Thank you. Good morning, Justice. This is Vincent Mancini on behalf of Mr. Eccle, who is the attorney assigned by the circuit court to prosecute this case. Okay. Instead of the normal 15 minutes, we're going to give you 20. How much do you want on your rebuttal? I'd like to reserve three minutes, Your Honor. Okay. Before we start, you know, you have a number of issues here. You can approach the bench. Don't be frightened. Okay. The issues I'd like to really have you zero in on is the ineffective assistance of counsel and the question of the substitution of judges. May I address any other issues, Your Honor? No, you can argue whatever you want to argue, but I'm just telling you what the court would like to hear. Thank you. Go ahead. What's your last name? Johnson. Thank you. May it please the court, counsel, the proceedings below were infected with error from beginning to end, and it led to Mr. Sylla spending 350 days and 350 nights in custody away from his family. We have always 12 issues in our brief, and I'd like to focus today on three of those issues. The first issue I'll address is that Mr. Sylla was prejudiced by the trial prosecutor's closing arguments. The second issue I'll address is that the trial court erred in denying the motion for substitution of judge as of right. And the third error I'll address is that Mr. Sylla received ineffective assistance of counsel. I have a question. So one of the main things that we have to consider here is whether or not those men's rape, right? That's correct. As a result of the affidavit being signed by your client. Yes. Okay. With respect to the first point, that Mr. Sylla was denied a fair trial as a result of the trial prosecutor's comments during closing arguments, this court can reverse, if the court finds there's sufficient evidence, the court can also remain for a new trial on this error alone. And this error is reviewed for plain error because trial counsel did not object to any of the improper closing arguments that were made. The trial prosecutor in this case committed a number of improper closing arguments, including vouching for his witness, Mr. Kita, vouching for the credibility of the decedent, Hau Asasoko, and expressing a personal disbelief in Mr. Sylla's witness. He also made several arguments that were not based on any evidence, and indeed made arguments that were contrary to the very evidence that he introduced, prosecution exhibit number four. In terms of what you call vouching, isn't that just part of what we do in closing an argument? We try to bolster, improve, or in some other way present a good picture of your witnesses as opposed to the other side? I mean, that's just part and parcel of what happens in closing arguments. So where's the prejudicial error here? Well, that is part of what goes on in closing arguments, but that needs to be based upon evidence, not upon the prosecutor's personal belief. But in this case, the prosecutor did use his personal belief. Specifically, he argued, and then Kita, who I believe was a credible witness. So the prosecutor's injecting his own personal beliefs, not based upon evidence. Was the jury instructed not to consider counsel's opinions and thoughts during closing argument and opening statement? Weren't they provided an instruction that indicated that whatever counsel says in closing argument or in opening statement is not the evidence? Certainly, that's the instruction that they were given. So what did he believe? He could believe that the sky is not green. Doesn't necessarily mean that the jury has to believe it, right? Well, I think the repeated assertions of his personal opinion and aligning himself with the court. Because at the beginning of the case, he said, you know, I'm appointed by Judge Lynch to prosecute this case. And then he went on to introduce evidence about Judge Lynch. Was he stating anything that wasn't fact? I mean, he was appointed by the court. Sure, but that was something that in the eyes of the jury would have. Now the prosecutor is aligned with the court, and all of the court's rulings are coming into evidence. And then we're hearing the prosecutor's personal opinions about the evidence, and he was appointed by the judge, who's presiding over this case. It's incredibly prejudicial. Why don't we do this? I threw you a softball. I gave you two issues. Let's go into those two issues. Sure. Turning to the second point, the court erred by denying the motion for substitution of judge as of right. Before someone can file a motion for substitution of judge as of right, they have to know who the judge is that's assigned to their case, and they have to know whether they can file a motion for substitution of judge as of right. And we know that you cannot file a motion for substitution of judge as of right where the proceedings are direct criminal contempt. In this case, the trial court did not make clear whether Mr. Sewell was charged with indirect criminal contempt or direct criminal contempt. And on August 21, 2013, that first day, the trial court left the question open. In fact, it wasn't until after the court denied the motion for substitution of judge as of right that it definitively stated that it was at this late hour that the proceedings were now indirect criminal contempt, as opposed to a direct or constructive direct criminal contempt. So there simply could not have been an earlier motion. And the time for filing the motion for substitution of judge could not have began to run prior to the judge definitively stating what the proceedings were. And therefore, where there's error in denying the motion for substitution of judge as of right, all the proceedings after that are unknown. Well, didn't that happen the first day? I mean, didn't the first — wasn't there a complaint filed as part of a court order the first day? Yes, Your Honor. There was a contempt that was titled. And the petition for a change of judge was filed the first day? The civil one? That was filed, I believe, on the 10th day, yes. And the next day, there was a supplemental motion filed by another lawyer. And the fact that those motions were filed doesn't mean that the time for filing had begun. The time for filing could not have begun on August 21 because there was no translator and there was no clarity about what the — You say there was no translator. Anybody ask for a translator? Nobody asked for a translator. But the judge did express a concern as to whether Mr. Sewell could understand — how well he could understand English. And ultimately, his trial counsel permitted him to answer questions about the passport. Was there ever a request for a translator? A defense counsel did not make a request for a translator. There was a translator later on, though. There was translators at each subsequent proceeding. That's correct. With respect to the indirect criminal contempt petition and the fact that it was titled indirect criminal contempt petition, that was not enough to put him on notice because that was accompanied by the trial court's comments that, look, we just need to put something down in writing to give him notice of what the charges are generally, and we're going to have a discussion later about what this actually means and how the case is going to proceed, whether it's going to be a minor contempt or a major contempt. So what does the charge have to do with the fact that he was asserting a substitution of right, which means you want to get away from this particular judge for whatever reason? Then you're going to have to state a basis. So whether he knew what the charges were or not is really irrelevant because the first motion was a motion for substitution of judge as a right. So it doesn't matter what the reason is. He doesn't have to give a reason. So why does that have to do anything with the charges that were brought before him? The reason why is because you're not entitled to a motion for substitution of judge if it's direct contempt. So if you stand up in court and offend the court by saying something, you can be held in direct contempt. You're not entitled to go to another judge when you misbehave in court and you're held in direct contempt. But when you're being sought to be held in indirect contempt, you do have that right, especially where the court is going to. So it's irrelevant whether it was a substitution for judges of right though, right? What do you mean? Well, you're saying that based on the charges, you're charged with regards to indirect criminal contempt, right? That then you need to know that in order to file your motion for substitution. Is that what you're saying? Yes, Your Honor. Okay. So it's irrelevant whether or not the motion for substitution of right got granted or not? No. Because there are no rules for a motion for substitution for cause, which then goes to Judge Kirby, who then denies their motion. Well, no, I would say it's not irrelevant that the motion for substitution of judge as of right was denied because any proceedings that occur after that are a nullity if it was denied in error. And that's our assertion is that it was denied in error. Whether there's a substitution of judge for cause error goes into our argument that the trial court was biased against Mr. Silla. But the problem with your argument is that if you're in direct criminal contempt, the judge holds you in direct criminal contempt and enters an order to that effect, he doesn't file a complaint against you. He files it when it's indirect criminal contempt. That's correct. So your argument should really be based on the fact that in an indirect criminal contempt case, you have an absolute right to a change of judge. Okay? The question is, what happens when you don't follow the criminal statute? Is there a case law that tells us that it doesn't make a difference? Yes, Your Honor. Under People v. Langford, one of the cases we've cited in our briefs, that says that when a motion for substitution of judge as of right is ambiguous, that you should be permitted an opportunity to amend it. And in this case, rather than seeking to amend, defense counsel filed a supplemental motion for substitution of judge the next day that cured any of the defects that were present in the first motion. That was a timely question. No, that would have been a day late because of the Labor Day holiday. Well, the question is, does it need to be timely? Not in that case because... What, do you have a case that says that? Well, I think People v. Langford is the closest we get, where they say you should have allowed the trial counsel an opportunity to amend, and that's similar to what defense counsel was attempting to do here. I mean, look, I think the record is clear that they were attempting to move as of right to remove trial court from deciding the case, and they cited the wrong statute. They came back the next day with a supplemental and tried to cite the right statute. And I don't think that there was ever any confusion below about what Mr. Silla was attempting to invoke, which is a substitution of judge as of right, and it was filed on the 10th day. Turning to my third point, Mr. Silla received ineffective assistance of counsel, and specifically trial counsel failed to object to the inadmissible evidence that we have set forth in our brief concerning the trial court's prior rulings, including that the trial court had vacated the judgment, that the trial court had found that there had been a valid marriage, and then the trial court had found that there had been fraud on the court and that the wrong errors were asserted fraudulently, and that the appellate court affirmed. Trial counsel should have objected to all of those things. And, in fact, in his motion for retrial, he went back and tried to recapture them untimely. Trial counsel also failed to object to the irrelevant and prejudicial evidence concerning the extent of the purported harm, including the $4.25 million verdict, the $60,000 settlement with the purported husband, the hundreds of hours spent by the court and the law firm Williams, Montgomery & Johns in post-verdict proceedings, and the sanctions motion. Williams, Montgomery & Johns, what? Pardon me. The hundreds of hours that they spent in post-judgment litigation, and that was introduced as something that Mr. Scylla caused and the harm that he caused to them. In addition, trial counsel did not object to the admission of the sanctions motion that WMJ had pending for in excess of $1 million against Mr. Scylla. And that evidence was then used as substantive evidence to show, yes, he did cause $1 million in damages. And all that was was a bald allegation. And while the jury was instructed, as all juries in criminal cases are, that the charging instrument is not any evidence against the defendant, the opposite happened when it came to this motion. And they used it as if it were true that he caused this $1 million in damages when it was never proven. It was simply a motion to begin litigation. Trial counsel also failed to object to the admission of the purported fraudulent divorce decree. And the error there was compounded by the trial prosecutor's closing argument where he used that evidence for propensity. He used other crimes evidence to argue Mr. Scylla's propensity to commit the charged offenses, and that is simply not permitted. And in this case, unlike the jury were instructed that closing arguments are not evidence, they were never instructed as to the limited nature of the other crimes evidence, as they should have been had defense counsel requested that instruction, had the trial court insert that instruction. So where's the prejudice there? I mean, here again, what we're looking at is, did he know at the time when he signed the affidavit in the interauditories whether or not she was married? And the trial prosecutor, Mr. Eccle, argued that because he procured that fraudulent divorce decree, you know that he also knew she was married for the affidavit when he signed it and the answers in the auditories when he signed those. And that's propensity, and that's not permitted. That's extremely prejudicial because other crimes evidence in particular has the ability to over-persuade juries, and that's why it's not permitted for propensity except in those limited circumstances that our legislature has allowed, none of which are applicable here. Trial counsel also failed to cross-examine the state's witness, Mr. Hanson Williams, regarding what appeared to be over $370,000 in payments made to individuals in Maui, including Mauian government officials. And we know that trial counsel had the ability to engage in this cross-examination because there's over 747 pages of e-mails in the record, including a letter that trial counsel had received with those e-mails. And the e-mails reveal that trial counsel had the ability to question. Oh, let's back up a second. Mr. Williams, during his direct examination, testified about all the lawyers he hired in Maui to get to the bottom of this. He talked about the investigation that he conducted, and he talked about the great expense that the Atlantic Ocean caused him in conducting this investigation. What the e-mails reveal is quite a different story. The e-mails reveal on page C278 of the record that when Williams, Montgomery & John, Mr. Williams, and an attorney known as Stephanie Giacchitti, when they couldn't get the statements they wanted, Ms. Giacchitti said she and an individual known as Little Rambo stormed the clerk's house and drug the bailiff into an empty courthouse today to get them to sign the statements that Mr. Williams had requested. She also told them how she had hired Little Rambo to negotiate documents under the table, that she had given Little Rambo some cash to try to accelerate his getting a document through outside channels. WMJ went on to request revisions to statements that were given by the judge and the lawyer that were used to vacate the verdict. And Ms. Giacchitti responded to their request for a revision by saying, I asked the Binocco team to be, quote, extra persuasive for signature as is, and took commensurate financial steps for the same. When WMJ requested a revised affidavit from the purported mayor who presided over the wedding of Ms. Sicilco and Mr. Kita, Ms. Giacchitti said that it was not going to be a small task, went through major hoops and moolah for the two we got from her, and still negotiated impossible depositions. Hold your hats. The invoice that accompanied that email showed over $15,000 in payments for motivated responses. The records also reveal on page C-489 that WMJ had been attempting to obtain a judgment register to show that the divorce was not true, and Ms. Giacchitti advised them that she had called in a couple of faders and paid a huge fee. But here it is. Invoice attests for processing. I paid everybody involved. And the invoice reveals a $5,000 expense for a registry copy fee to the court clerk. At the data center, a certified statement of conviction is $9. They paid $5,000. And when it came apparent at some point that they were having a hard time sending that money over there to get the evidence they wanted, at page C-280 of the record, they were confronted with what they were told were restrictions on U.S. banking laws, their ability to send payments. You know, you're already past your time. You want to save some time for rebuttal. Yes, I do, Your Honor. I'll just close by saying this e-mail said the Attorney Department of WMJ said, for obvious reasons, nobody's going to want to use their personal information. And for similarly obvious reasons, it cannot be true, Mr. Atka's contention, that these were nothing more than the reasonable costs of obtaining government records in Mali. And we would ask this court to reverse and remand, or reverse, but if the court finds the evidence is sufficient, then to remand for a new trial. Thank you. Mr. Stiroff, I want to ask you this question. If we find that the motion for a substitution of judge was not made pursuant to statute, how would this not be an effective assistance of counsel? Because what the case law instructs is that it's not just the allegation of prejudice in an ineffective assistance of counsel claim. You actually have to show the prejudice as a result of the attorney's failure to file the timely substitution of judge. I could point to the exact case. It's People v. Peterson from this case. No, you know, I agree with you. You have to show the prejudice. There's no question about it. So I don't think it's per se. You don't think that there was any prejudice here with this trial? I don't believe there was, not in the trial. You look at that trial record, there's no indication whatsoever that Mr. Silla didn't receive anything but a fair trial. He had competent counsel. He had a judge who was just making evidentiary rulings, most of which were, in fact, against the prosecution. And the jury heard the arguments. The jury concluded what the jury concluded. There's nothing to determine or find that there was some prejudice in that trial as a result of anything Judge Lynch did. What they try to do is bootstrap all these other references to statements Judge Lynch might have said throughout the course of years of litigation to establish that there was some prejudice. But that's not the test. The test is what, in those circumstances of that trial, in an ineffective assistance of counsel claim, can demonstrate that he was prejudiced by not filing the motion for substitution of judge. And that just doesn't exist on this record. Could you, with regards to the motion for substitution of judges of right, could you address the timing issue? There appears to be some discrepancy with regards to the actual presentation when it was filed. I can, Judge Royce. So the actual charge was drawn on August 21st. The substitution of judge motion, excuse me if I can find it, was filed on September 10th. No, the next court date was September 10th. And then the first substitution of judge motion was filed 11 days after the August 21st date. So it was one day late when it cited the correct code. The prior one cited the incorrect code. So that's what the difference is between the two. And strict, you do have to file the statute strictly. That's what the case law tells us on substitution as a matter of right. They didn't do that. What Appellant tries to do is say, well, you should look at this liberally and construe it liberally because that's what he wanted to do was he wanted to substitute Judge Lynch. And there is case law to that effect. But what the appellate courts have said is you can't liberally construe a statute so as to contravene its actual terms. That's the People v. Burns case, which is without a fourth district, which has been cited by numerous appellate courts since then. And in that case, what happened was the individual didn't allege prejudice in his motion for substitution as a matter of right. You still have to allege it. You don't have to prove it, but you have to allege it according to the statute. So when he didn't do that, he tried to amend it to do that after the 10-day period, and the appellate courts said, no, you can't do that. The statute is quite clear as to what you have to allege within those 10 days. You have 10 days to do it. You have to follow that. If you don't, you don't get another crack at that apple. But it's all much to do about nothing in this case because they also filed a motion for substitution as a matter of cause, which was heard by Judge Kirby after a full argument and motions to reconsider, and Judge Kirby determined that there was no cause. So what we have here is we have attorneys filing a motion to substitute a judge within days of the indirect criminal contempt petition being filed. They did it incorrectly, but they filed it. So the argument that's being presented to the court is nonsensical. Mr. Siller, via his attorneys, asked to substitute Judge Lynch days after Judge Lynch initiated the contempt, indirect criminal contempt petition. So to say that Mr. Siller and his lawyers didn't know that Judge Lynch was presiding over an indirect criminal contempt petition until September 10th doesn't make sense. Why did he file the motion? He filed the motion because he wanted to substitute Judge Lynch. He did it incorrectly. It was corrected, albeit after the 10-day time period. When the original was filed, Judge Lynch hadn't ruled on anything substantive, correct? Correct. And there hadn't been any proceeding yet with regards to the hearing or the trial or the selection of the jury? Absolutely correct. All right. So doesn't the statute address that, that in terms of substitution of judges are right as long as there has been no substantive ruling that it's done before a hearing or a trial, that it's permissible to grant motion for substitution of judges are right? Only if it's filed within the first 10 days. And that's what the appellate courts have consistently held as a statutory requirement. It has to be filed in that time frame. But here we had the original filed within the appropriate amount of time. Incorrectly. Incorrectly. But then it was amended. It was self-amended, amended, whatever. And the trial court allowed the supplement. I don't know the answer to that. The record is not clear as to whether they ever sought leave to amend, sought leave to supplement. But for the purpose of the argument, I'll concede that it was supplemented and the court was aware of that. Okay. All right. So there is a case law that says that if a motion is improperly filed, but then it's supplemented, but they're late, that it should not be heard. People v. Burns, what I talked about earlier. That's the one where he didn't allege prejudice in this motion for substitution as a matter of right. Although you don't have to prove prejudice, you have to allege it. And the appellate court said, If failure to allege it can't be cured after the 10-day period through an amendment or a supplement. It just can't be. You have to follow the strict rules under the statute. So that's what we relied on in our brief, to say that the motion for substitution as a matter of right was properly denied given this particular time frame and the context in which the motions were brought in relation to the next court date, which was the September 10th date. And counsel said to People v. Langford, I'm sorry, that didn't appear in the brief from what I could tell, so I can't address that. I'm not aware of that particular case as to the ability to supplement a motion after the 10-day time period. Turning to the ineffective assistance that counsel claims, this is an interesting case because the evidence that they're saying that should have been introduced also is evidence of possible wrongdoing or at least gives the impression of wrongdoing by Mr. Silla. Mr. Muslin, who is the defense attorney, had a very difficult job in this case because it was a very narrow, limited amount of evidence. It was a marriage certificate. It was a husband coming in saying, I was married to Ms. Sissoko. And that was it. There was other evidence, but that was primarily it. So if we're going to go down this road and introduce, for example, they argue they wanted to introduce Mr. Silla's evidence deposition, that that somehow should have been introduced into evidence. This was a criminal proceeding. You can't introduce his evidence deposition, at least the prosecution didn't introduce it. And we point that out. The prosecution, it didn't get introduced into evidence. But now they're saying on appeals that, well, you should have, Mr. Muslin should have introduced it because it had some statements that were, I don't know, exculpatory. But how do you introduce your client's testimony without presenting him on a witness stand but seek to introduce his evidence deposition? They don't explain how to do that. I don't think you can. The defendant had the right to testify. He could have testified. He chose not to. We presume that was a strategic and good decision, and nothing changes that in this record to establish that Mr. Silla should have been allowed or was prohibited his opportunity to testify. That just doesn't exist. So when you talk about these e-mails to Mali officials and all these payments that were made, that only exacerbates the harm done to the judicial system. If that evidence is introduced and the jury hears that these people had to spend millions, hundreds of thousands of dollars across country lines and then dig up the evidence, in fact, to establish that Mr. Silla had lied on the affidavit of ownership and the interrogatories, that just further obstructs, interferes, hinders the administration of justice, which further buries Mr. Silla in the criminal contempt proceeding. So Mr. Muzzin was in a very difficult decision. He made the strategic choice, and as Justice Reyes has pointed out, to attack the mens rea, which was did he know that when he signed that affidavit that Ms. Sissoko was not married. And he was unsuccessful. But that's what he tried to do because that was the only position he could be in without further burying his client. He also blamed Attorney Reuter, for example. So Mr. Reuter was the mastermind behind signing these affidavits and interrogatories. A solid strategic decision, which would have been undermined had he introduced the exhibit of Mrs. Unclein's testimony, for example. Because if you actually read that exhibit, Mr. Silla doesn't do himself many favors in that evidence deposition as it relates to his knowledge of this affidavit of airship and the interrogatories. So it's nice to come into an appellate court and cherry-pick your arguments and say you should have done this, you shouldn't have done this, especially on an ineffective assistance of counsel claim. But when you're facing the trial court, you have to try the case. And you're looking at a jury, and you're going to wave around a marriage decree and say look at how inconsistent it is. But yet it's a marriage decree, and your client is up for a content petition because he's hid a marriage in a pending lawsuit. You have to be careful with that. And that was the choices, and I think made good strategic choices by Mr. Muslin, to not wave around a marriage decree in open court and to rather deflect to issues. So you're talking about trial strategy? Absolutely, 100 percent. Because of these things, if you have a marriage decree and it had inconsistencies or irregularities, but it was still a marriage decree, that doesn't change the fact that the people were married. It doesn't help your case. What helps your case is what he did, tried to establish the lack of mens rea. And as you all know, mens rea is established generally by circumstantial evidence. It's not that you really have a letter from the defendant saying I intended to shoot so-and-so. It's rather circumstantial, and that's what this case was. And I think there was enough evidence, given Mr. Chieta's testimony. He said he met Mr. Serra, was introduced as Ms. Serco's husband on one occasion. Counsel points out in the reply brief, I did make an error in our brief. He only met him once, didn't meet him twice. Traveled to Chicago twice, but only met Mr. Serra once and was introduced as the husband. So that evidence was enough for the jury to finally have the requisite knowledge. You'll agree that the evidence here was circumstantial? It is. Yeah, for mens rea, certainly. The evidence of a marriage, no. But, yeah, for the mens rea, there are always circumstantial cases. And what do you think about the sentence that the judge gave? The prosecutor never asked for a particular range. I think the analysis that the judge did in comparing it to burglary and other felonies, serious felonies of deceit and dishonesty, was well-founded. You have to compare it to something. As it relates to the six years that he sentenced him to, I really don't have a position on that. I'll leave that to your Honor's discretion. I have a question with regards to the judge's comments. One of the things that was pointed out during the proceedings was that the defendant really wasn't going to derive any type of financial benefit. So how is the relation between that and let's say burglary, where you go in and steal something from somebody, you're going to derive a benefit. Yeah, he wasn't going to have a direct benefit. And that was clear on the record, that there were brothers, uncles, siblings, that were all part of the family tree if, in fact, Mr. Sokol was not married. So personally, yeah, he did not have a financial stake in the litigation, but his family did, back in Mali. And that was pretty clear on the record. So in addressing those two points that your Honor wanted to discuss, I don't have any more to discuss beyond that. If you have any other questions, I'd be happy to answer them. Otherwise, we think the evidence was sufficient to affirm. We'll leave the sentence to the Court's discretion as to whether it was- Which prosecutor didn't ask for a particular range? Why? You said the prosecutor didn't ask for a particular range. Did not. There is no range as set by statute. It's a common law creation, so there is no range. It's up to the Court's discretion. Probably was the prosecutor. My partner, Terry Echol. Exactly. You were the prosecutor. I wasn't. My partner was, but yeah, our firm was. We were amicus curiae. And your response to Justice Gordon's question was what? We did not ask for a range. So in light of that, we just asked you to affirm the decision. Doesn't that speak volumes itself? Judge, I have a job to do, and we're sometimes put in these weird positions. I don't know about the judge, but- Well, and I don't mind that. I'm just having fun with you. Sure. No, and I get it. But, yeah, a six-year sentence seems awfully harsh.  I also become numb to the fact that we all know it occurs every day. People misrepresent things to the Court. They sign interrogatories. They change them. But this was pretty substantial in terms of what occurred. Is not that sentence reflective of what your opponent is arguing in terms of the judicial bias? No, I don't think a sentence is. It wouldn't be at all. Because bias would have to be based on something besides just the fact that you pissed off the judge. The bias that you're talking about has got to be based on race, nationality, sexuality, something of that nature that would violate due process. But the fact that this judge heard the evidence, understood all of the facts of the case- You're talking about indirect contempt. I'm talking about indirect criminal contempt. Do you have other cases that has anywhere close to this type of sentencing? There aren't many at all, and neither party really cited to any of them. We have to draw analogies, and I think that's what Judge Lynch did, was trying to draw an analogy to a burglary. Right or wrong, that's what he tried to do, because there aren't cases out there. There aren't many indirect criminal contempts that result in prison sentences that result in appeals. And with regards to the burglary again, didn't he kind of correlate it to in a burglary if you have like 500,000 up to a million, then in a criminal court you would be sentenced X number of years and vice versa. But here the verdict was vacated, right, previously? Right. So, again, I don't get where the burglary analogy comes in. What Judge Lynch did, and counsel is correct in pointing this out, was that he said, well, there was all this expense incurred by the law firms to unravel this. So not only did you have years of litigation that was for naught in the front end, but then on the back end you had another year or so of litigation, including appellate litigation, as it relates to vacating the judgment, discovery, molly government records, things of that nature. And I think what Judge Lynch did was look at that number and came to the conclusion that was in excess of a million when he determined the range that was appropriate as if it was a burglary. Thank you. Your Honor, we did cite the People v. Langford case. My colleague is incorrect about that. Overlooked on page 12 of our brief, we cited People v. Langford in response to their citation of People v. Burns. Second, counsel is also incorrect that Prosecution Exhibit No. 4 was not introduced into evidence. In fact, it was introduced into evidence in Supplemental Report of Proceedings, Volume 3, page 728 to 729 on the motion of Mr. Echol. Second, or third, I'd like to get back to addressing what the Court first asked Mr. Rancini about, which was prejudice as a result of the denial of the motion for substitution of judge as of right. There is no required showing of prejudice. If a trial court is biased against someone, you don't have to then go on and show whether rulings were biased. It's a structural error. No additional showing of prejudice is required. And in this case, the trial court's comments – Do you have a case that says that? Yes, I do. The case that says that is Nader, N-E-D-E-R v. United States, I-27 U.S. 1. Specifically says – U.S. 1? U.S. page 1, first page of that volume. And that says that the trial before a biased judge is a structural error and thus subject to automatic reversal. And similarly – well, I'll just rely on that. Well, to prove ineffective assistance of counsel, you have to show prejudice as one of the elements. And the prejudice in terms of trial counsel's untimely motion for substitution of judge as of right, the prejudice there is simply that he was tried by a biased judge. And that is it. You don't have to then go further and show a ruling was in error. What about the argument that, you know, it doesn't really matter because then you still present a motion for substitution for cause and it went through a full-blown hearing by another judge and that other judge made a determination? Well, there's two – I guess there's two different standards of review for – there's a few different standards of review. First is just the argument about the motion for substitution of judge as of right was – should have been granted and, therefore, it's void after that. But with respect to the other point about the motion for substitution of judge as of cause, that goes to the argument that we've raised on a brief that Mr. Solon was tried by a biased judge. And that's based on comments the trial court made on January 29th, 2013, where he says, I don't care how poor or terrible it is in Bali. Arguably, that's evidence against them. But Judge Kirby had a full-blown hearing and he determined that there was no bias or prejudice and sent it back to Judge Lynch. And we're raising the issue for this Court to decide whether the trial court was prejudiced against Mr. Solon based upon the comments that he made. So you're arguing now that Judge Kirby's ruling was incorrect? Well, it's all the same issue. I mean, we don't have to argue that Judge Kirby's ruling was incorrect because it's a freestanding error to be tried by a biased trial judge. So even though that motion was litigated, that preserved the issue. The question is ultimately coming back to was the trial court biased against Mr. Solon based upon the comments that he made? And under the United States v. Berger case that we cited, his comments are very similar and also require a reversal and, if the evidence is sufficient, remand. And if there are no further questions, I will stand on the remainder of our brief. Thank you. I want to thank the lawyers for excellent briefs and excellent arguments. You've given us a very interesting case. It's about time a case like this was published to be able to really set the standard for what do you do in an indirect criminal contempt proceeding and what's appropriate and what's not appropriate. And we'll take this case under advisement and do our best to get it right. Thank you. Thank you.